**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ARMANDO SANTANA-GONZALEZ, | No. 16-70793 |
| *Petitioner*, | Agency No. A201-154-159 |
| v. | OPINION |
| PAMELA BONDI, Attorney General, | |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 11, 2026[*]
Pasadena, California

Filed April 8, 2026

Before: Richard C. Tallman, Lawrence VanDyke, and Eric
Tung, Circuit Judges.

Opinion by Judge VanDyke;
Concurrence by Judge VanDyke

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Immigration

Denying Armando Santana-Gonzalez's petition for review of a decision of the Board of Immigration Appeals dismissing his appeal from an Immigration Judge's decision denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture, the panel held that Santana had forfeited all exhausted bases to challenge the agency's decision and failed to exhaust the procedural due process claims he raised before this court.

In his opening brief, Santana failed to make any argument that the BIA or IJ erred while deciding the merits of his claims for immigration relief. He also failed to file a reply brief or otherwise explain why the panel should excuse his forfeiture. Thus, the panel concluded that Santana had forfeited these issues and arguments, which appeared meritless in any event.

Before this court, Santana argued only that his due process rights were violated before the IJ. But he did not exhaust this argument before the BIA. The panel rejected Santana's argument that he preserved his due process challenge because he described the IJ's decision as "wrongfully made" in his notice of appeal before the BIA.

Concurring, Judge VanDyke, joined by Judge Tung, discussed this court's process of automatically granting a

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

stay of removal upon the filing of a threadbare stay motion and general unwritten practice of deferring any judicial review of stay motions for many months or even years, until the case is eventually assigned to a merits panel for a final disposition. This practice, in Judge VanDyke's view, violates clear instructions from the Supreme Court and introduces into immigration enforcement massive and debilitating delays, which have become the primary object of thousands of meritless immigration petitions each year. Judge VanDyke wrote that this case's tortured history confirms that the court delivered precisely the one thing immigration petitioners can reliably expect a frivolous immigration appeal to produce in this circuit—*more time*. Judge VanDyke reiterated what he has written elsewhere that it is past time for the court to get serious about this issue and address it by conforming the court's procedures to the Supreme Court's clear instructions in *Nken v. Holder*, 556 U.S. 418 (2009).

## COUNSEL

Wilson W. Wong, WilsonWongLaw PC, Redlands, California, for Petitioner.

Timothy G. Hayes and Brendan P. Hogan, Attorneys; Cindy S. Ferrier, Assistant Director; Office of Immigration Litigation; Joseph H. Hunt, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

VANDYKE, Circuit Judge:

Petitioner, Armando Santana-Gonzalez ("Santana"), a native and citizen of Mexico, seeks review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal from an Immigration Judge's ("IJ") decision denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), and ordering his removal to Mexico. We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252 and deny the petition for review.

## I. Background

Santana unlawfully entered the United States on multiple occasions between 2014 and 2015. Santana first unlawfully entered the United States in January 2014 but voluntarily returned to Mexico in July of that year. Santana was then twice denied entry when he attempted to return to the United States in May 2015. Santana again reentered the United States after unsuccessfully applying for admission in July 2015 at a port of entry without a valid entry document.

Santana first expressed a fear of returning to Mexico during his interview with an asylum officer in August 2015. He claimed that he was harassed by members of a group opposed to Mexican cartels back home. According to Santana, this group, which called themselves "Defensores of Guerrero," threatened to hurt Santana unless he joined either their group or a rival group, the Knights Templar cartel. Santana could not explain the logical inconsistency of a group pressuring him to join the rival cartel, but he did acknowledge that the Defensores of Guerrero never actually

harmed him. He also surmised that they were probably pressuring "everyone" to join their group. Santana reported one instance of the group's harassment to police officers, who assured him that he had nothing to worry about from the encounter.

Santana reported that after that discussion with the police, he received an anonymous phone call from an individual who threatened to kill him if the Defensores of Guerrero were able to locate him. He inferred from that threat, along with the police's practice of seizing property from individuals who fled the area, that the Defensores of Guerrero were supported by the police and military. But Santana, when talking with an asylum officer, explained that there was no other reason that he feared returning to Mexico and that he had never "experienced any harm or mistreatment by a public official … or anyone acting under the color of law" while there. The asylum officer then referred his case to an IJ.

The Department of Homeland Security ("DHS") served on Santana a Notice to Appear in August 2015, which charged Santana as a removable alien. Santana waived his right to counsel, admitted the allegations in the Notice to Appear, and conceded his removability in September 2015. In October 2015, Santana filed an asylum application. Santana again contended that he could not return to Mexico because the Defensores of Guerrero would harm him if he refused to join them "or join another group." He also added that unidentified individuals had tortured and threatened his father, a business owner, in an attempt to take his money. Santana also presented letters from his family, who complained of the high crime rate in Mexico. He did not present a letter from his father.

Santana testified before an IJ in November 2015, once again waiving his right to counsel.  He stated that criminals assaulted his father in 2013 to extort money from him while in Mexico.  He also testified that in 2015 the Defensores of Guerrero boarded a bus Santana was riding and threatened him in an effort to force him to join either their group or another group.  But, again, Santana never testified that he was harmed.  And although Santana reported the incident to the police, the officers reassured him that he had nothing to worry about.  Santana then repeated the incident of receiving a phone call following his conversation with the police, where an anonymous caller threatened to kill him.

Because of his experience with the Defensores of Guerrero and because of his father's experience with extortion, Santana said he was fearful of moving back to Mexico and could not relocate internally without exposing himself to criminals in other parts of that country.  But Santana also testified that his parents and four siblings continued to reside in Mexico without incident.

After the IJ asked him to explain whether there were any other reasons that he feared returning to Mexico, Santana added that he was a homosexual and had faced "normal discrimination" because of his sexual orientation.  While Santana feared discrimination if he returned home, he clarified that he had never been physically harmed because of his sexuality and admitted that he was unsure whether other regions of Mexico would be safe for homosexuals.

The IJ denied Santana's applications for relief from removal and CAT protection in November 2015 and ordered him removed to Mexico.  The IJ found that Santana failed to establish a nexus between any protected ground and either his recruitment by the Defensores of Guerrero or his father's

experience with criminals. The IJ also found that neither the discrimination Santana experienced in Mexico on behalf of his sexuality nor the threat that his father received rose to the level of persecution. But even if it did, the IJ found that, under all the circumstances, internal relocation in Mexico would have been reasonable. And because Santana had failed to meet his burden for asylum, the IJ found that he could not meet his burden to establish withholding of removal. Finally, the IJ found that Santana had failed to establish a sufficient likelihood of torture in Mexico by or with the acquiescence of the Mexican government.

Santana appealed the IJ decision to the BIA, reiterating in his original arguments that he feared returning to Mexico because of the Defensores of Guerrero. Santana also alleged for the first time that Mexican police had physically assaulted him when he was a child because of his sexuality. And Santana submitted a country conditions report but did not make any argument for protection or withholding based on that document.

The BIA dismissed Santana's appeal in February 2016. The BIA agreed with the IJ that Santana had not shown a nexus between a protected group and either his own experience with the Defensores of Guerrero or his father's experience with criminals. And notwithstanding Santana's new claim that he had been physically harmed because of his sexuality, the BIA relied on Santana's previous statement to the IJ—that he had never been physically harmed because of his sexuality—to conclude that Santana's asserted harms fell short of the threshold to establish persecution. Finally, the BIA agreed with the IJ that, even if Satana would be persecuted because of his sexuality, internal relocation within Mexico would be reasonable, and Santana had failed to establish that he would be tortured by Mexican authorities.

Santana, through counsel, filed a timely petition to review the BIA's decision.  In his opening brief before this court, Santana does not meaningfully challenge the agency's determination that he was not entitled to immigration relief and has thus forfeited all exhausted bases to challenge the agency's decision.  Instead, Santana makes only one argument in his petition: that his due process rights were violated before the IJ.  Santana claims that he preserved his due process challenge because he described the IJ's decision as "wrongfully made" in his notice of appeal before the BIA, thus supposedly putting it on notice of his due process arguments.

## II. Standard of Review

This court has jurisdiction to review final orders of removal from the BIA under 8 U.S.C. § 1252(a).  The court reviews "the agency's 'factual findings for substantial evidence.'"  *Ruiz-Colmenares v. Garland*, 25 F.4th 742, 748 (9th Cir. 2022) (citation omitted); *Urias-Orellana v. Bondi*, 607 U.S. ----, No. 24-777, 2026 WL 598435, at *5 (U.S. Mar. 4, 2026).  Under the substantial evidence standard, this court must accept the agency's findings unless the record "evidence is so compelling that no reasonable factfinder" would reach the agency's conclusion.  *Smolniakova v. Gonzales*, 422 F.3d 1037, 1044 (9th Cir. 2005).

## III. Discussion

In his opening brief, Santana fails to make any argument that the BIA or IJ erred while deciding the merits of his claims for immigration relief.  Santana also failed to file a reply brief or otherwise explain why this panel should excuse his forfeiture.  Accordingly, Santana has forfeited these issues and arguments, which appear meritless in any event.

Before this court, Santana only argues that his due process rights were violated before the IJ. But he did not exhaust this argument before the BIA. Santana's claim to the contrary—that he preserved his due process challenge because he described the IJ's decision as "wrongfully made" in his notice of appeal before the BIA—fails.

## A.

The BIA upheld the IJ's determination that Santana was not entitled to asylum, withholding of removal, or CAT protection because (1) Santana failed to establish a nexus between his asserted harm and a protected ground, (2) his asserted harm did not rise to the level of past persecution, (3) relocation was not unreasonable, and (4) Santana failed to establish a sufficient likelihood of torture by or with the acquiescence of Mexican authorities if he returned home. Santana does not meaningfully challenge any of these determinations in his opening brief. Santana has therefore forfeited his challenge to the BIA's determination by failing to raise any argument against them. *See* Fed. R. App. P. 28(a)(8)(A); *Steinle v. City and County of San Francisco*, 919 F.3d 1154, 1165 (9th Cir. 2019) (declining to consider an argument that was not raised).

## B.

Even if Santana had challenged the BIA's determinations, the record does not compel the conclusion that the BIA erred in finding that he had failed to establish eligibility for immigration relief.

Starting with the agency's nexus determination, substantial evidence supports the BIA's conclusion that Santana's father's extortion—by unidentified criminals motivated by financial gain—was unconnected with any

protected ground. *See Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) ("An alien's desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground."). Substantial evidence also supports the agency's determination that Santana's harassment from the Defensores of Guerrero was likewise unconnected to any protected ground. Santana never testified that this vigilante group pressured him to join because of a protected ground and even conceded that they were probably pressuring "everyone" to join. Santana's failure to demonstrate a connection between any protected ground and these criminals' threats forecloses a finding of persecution on account of a protected ground. *See I.N.S. v. Elias-Zacaria*, 502 U.S. 478, 482–84 (1992) (explaining that petitioners must provide some evidence that persecution occurred because of a protected ground).

The record also does not compel a conclusion that Santana's claimed discrimination based on his sexual orientation rose to the level of persecution and does not compel the conclusion that internal relocation was unreasonable. Santana expressly conceded that he had never been physically harmed because of his sexuality and that he only experienced "normal discrimination" because he was a homosexual. The agency, like any reasonable factfinder, could rely on the concession that Santana "had only been subject to the 'normal discrimination'" and "had not been physically harmed" to find that this treatment fell short of past persecution. Even though Santana later contradicted himself, "[u]nder the substantial evidence standard of review, the court of appeals must affirm when it is possible to draw two inconsistent conclusions from the evidence." *Pedro-Mateo v. I.N.S.*, 224 F.3d 1147, 1150 (9th Cir. 2000)

(citing *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999) (en banc)).  And the record does not compel the conclusion that the discrimination Santana initially reported rose to the level of persecution because "'discrimination,' by itself, is not the same as persecution." *Wakkary v. Holder*, 558 F.3d 1049, 1059 (9th Cir. 2009) (quoting *Fisher v. I.N.S.*, 79 F.3d 955, 962 (9th Cir. 1996) (en banc)).  Neither does the record compel the conclusion that the agency erred in finding that internal relocation was reasonable, since Santana could not explain why relocation to other regions of Mexico would not avoid discrimination or recruitment by vigilante gangs.

Finally, because the record does not compel a conclusion that Santana established *any* nexus between an asserted harm and a protected group, the record likewise does not compel a conclusion that a protected ground would be "a reason" for persecution sufficient to support withholding of removal. *See Jie Cui v. Holder*, 712 F.3d 1332, 1338 n.3 (9th Cir. 2013) ("[W]here, as here, the claim for withholding is based on the same facts as the claim for asylum, the failure to establish eligibility for asylum results in the failure to demonstrate eligibility for withholding.").  And, because the record contains only country conditions reports and Santana's testimony about his generic fear of harm from criminals and vigilantes unconnected to the government, the record also does not compel the conclusion that Santana is more likely than not to be tortured upon his return to Mexico by or with the acquiescence of government actors. *See Andrade-Garcia v. Lynch*, 828 F.3d 829, 836 (9th Cir. 2016) (explaining that "inability" of government to arrest criminals "is not evidence of acquiescence" in torture).

Thus, even if Santana had not forfeited his exhausted challenges to the agency's decision, any such challenges would have been meritless.

## C.

Santana's sole argument before this court is that the IJ committed a series of procedural mistakes that violated his due process rights. He, through counsel, argues that the IJ denied him due process by failing to fully explain the hearing procedures, develop the record related to his sexuality, notify him that he should translate supporting evidence into English, remind him of his right to legal representation, and provide him with a competent interpreter. But Santana never raised these issues when he appealed the IJ's decision to the BIA. Instead, he merely alleged that the IJ decision was "wrongfully made" in his administrative appeal notice and asked the BIA to review an attached country conditions report, actions that he now contends encompassed all the due process arguments contained in his opening brief before this court.

The BIA need not consider any argument not raised in an administrative appeal, so the dispositive question before us is whether Santana exhausted his due process argument simply by labeling the IJ decision "wrongfully made" in his administrative notice of appeal or by attaching a country conditions report to his administrative brief. *Abebe v. Mukasey*, 554 F.3d 1203, 1208 (9th Cir. 2009) (per curiam) ("Petitioner will therefore be deemed to have exhausted only those issues he raised and argued in his brief before the BIA.").

Even under the deferential standard afforded to pro se litigants, Santana's assertion that the IJ decision was wrongfully made and his request that the BIA review his

attached country conditions report did not give the Board an "adequate opportunity" to consider his due process arguments, sufficient to exhaust them.  *Pagayon v. Holder*, 675 F.3d 1182, 1188 (9th Cir. 2011) (explaining that "a 'general challenge to the IJ's decision' will not suffice" to exhaust an argument).  Although claims raised by pro se petitioners are given "their most liberal construction," those claims must still give the BIA "an adequate opportunity to pass on the arguments … present[ed]" in the petition for review.  *Id.*

Santana's general statement that the IJ decision was "wrongfully made" could not have alerted the BIA of the specific due process arguments that he now seeks to raise before this court.  Due process, as we have held, "is not a technical conception with a fixed content" but "is flexible and calls for such procedural protections as the particular situation demands."  *Ching v. Mayorkas*, 725 F.3d 1149, 1157 (9th Cir. 2013) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).  As such, Santana's vague assertion that the IJ decision was "wrongfully made" could not have placed the BIA on notice that he was raising any due process challenge, much less what specific procedural due process argument he was making or how it applied to the facts of his case.  Nor could Santana's request that the BIA review the country conditions report, or even that the IJ failed to review that report, have put the BIA on notice that he was challenging various procedural violations unrelated to that report.

Because Santana failed to exhaust his procedural due process arguments before the BIA, we do not reach the merits of those claims.  *See Agyeman v. I.N.S.*, 296 F.3d 871, 877 (9th Cir. 2002) ("[W]e may not entertain due process

claims based on correctable procedural errors unless the alien raised them below.").

**PETITION DENIED.**

---

VANDYKE, Circuit Judge, with whom TUNG, Circuit Judge, joins, concurring:

A rational observer might wonder how an alien—who conceded his removability in 2015 and whose application for immigration relief was ruled meritless in 2015 and then again in 2016—could possibly still be in the United States pursuing a meritless claim for immigration relief *a full decade* later. That's a good question, but unfortunately the extensive delays in this case are hardly unique.[1]   Like

---

[1] In just one week in February 2026, the three-judge panels of which I was a member also reviewed and denied relief in six meritless immigration petitions filed in 2017, three meritless petitions filed in 2018, three meritless petitions filed in 2019, one meritless petition filed in 2020, and one meritless petition filed in 2022. *See Barrios v. Bondi*, No. 17-72606, 2026 WL 396361 (9th Cir. Feb. 12, 2026); *Cervantes-Rosales v. Bondi*, No. 17-71468, 2026 WL 412947 (9th Cir. Feb. 13, 2026); *Xu v. Bondi*, No. 17-71615, 2026 WL 412942 (9th Cir. Feb. 13, 2026); *Roque-Lopez v. Bondi*, No. 17-72204, 2026 WL 412941 (9th Cir. Feb. 13, 2026); *Magana- Aguilar v. Bondi*, No. 17-72017, 2026 WL 396362 (9th Cir. Feb. 12, 2026); *Moncada-Ochoa v. Bondi*, No. 17-72854, 2026 WL 396364 (9th Cir. Feb. 12, 2026); *Bermudez v. Bondi*, No. 18-71109, 2026 WL 445315 (9th Cir. Feb. 17, 2026); *Tolentino-Pena v. Bondi*, No. 18-70310, 2026 WL 445307 (9th Cir. Feb. 17, 2026); *Mirzakhanian v. Bondi*, No. 18-70705, 2026 WL 446411 (9th Cir. Feb. 17, 2026); *Sanchez Escobar v. Bondi*, No. 19-71421, 2026 WL 445321 (9th Cir. Feb. 17, 2026); *Zavala Torres v. Bondi*, No. 19-72647, 2026 WL 445313 (9th Cir. Feb. 17, 2026); *Gamino Corona v. Bondi*, No. 19-70378, 2026 WL 458225 (9th Cir. Feb. 18, 2026); *Nicolas-Nicolas v.*

countless others, this case illustrates the extremely problematic fact that "the Ninth Circuit offers more than half of the immigration petitioners in the nation an open tap of time to remain in the United States, no matter how meritless their claims might be." *Rojas-Espinoza v. Bondi*, 167 F.4th 1069, 1078 (9th Cir. 2026) (VanDyke, J., dissenting from the grant of rehearing en banc).

You don't have to take my word for it; all you need to do is just peek below the surface at the record in this case. Everyone involved in this case knows that the primary objective of Santana's meritless appeal was simply to secure more time in the United States. Back in 2015, the IJ denied Santana's application for relief as meritless and then, in the same breath, *encouraged* him to appeal the justified denial of relief simply to secure more unwarranted time in the United States:

> JUDGE TO MR. SANTANA: I'm going to deny your applications, urge you to take an appeal of my decision. No, I urge you to take an appeal. And that'll buy you some more time. Do you understand?
>
> MR. SANTANA TO JUDGE: Yes.

While this exchange might reasonably prompt concern within the Department of Justice about the propriety of employing an IJ who intentionally seeks to delay the Agency's own enforcement actions, the exchange and decade-long history of this case should prompt even greater concern for the judges of the Ninth Circuit. It is now an open

---

*Bondi*, No. 20-71638, 2026 WL 396435 (9th Cir. Feb. 12, 2026); *Alfaro-Castro v. Bondi*, No. 22-488, 2026 WL 382042 (9th Cir. Feb. 11, 2026).

secret that our court introduces massive and debilitating delays into immigration enforcement. Perversely, those very delays—which our court guarantees to every immigration petitioner who asks for one—have become the primary object of thousands of meritless immigration petitions each year.

The Ninth Circuit's immigration procedures and precedent are so broken that it is functionally malpractice for an immigration attorney *not* to file an immigration appeal before our court, even if they know it will be frivolous. That's because our system allows for immediate and automatic stays of removal whenever an illegal alien challenges the United States' immigration agencies' deportation orders before our court. Delay is the name of the game, and with enough frivolous litigation—and a little luck—an alien can remain in this country long after being ordered removed.

Santana got lucky. He was first ordered removed in November 2015. But because he challenged that order of removal before the BIA, he was entitled to stay in this country until the BIA announced its dismissal of his appeal in February 2016. At that point, he had exhausted his administrative avenues for relief before the immigration agencies. But in March 2016, he filed a petition for review before our court asking us to set aside the IJ and BIA decisions on new and unexhausted grounds. Maj. Op. 12–14. Santana simultaneously filed a motion seeking a stay of removal pending appeal. That stay motion, a panel of our court noted, "offered no information about the facts of the case and failed to attach the order for which he sought review." Nevertheless, when Santana filed his threadbare motion requesting a stay, our court automatically entered a stay of removal pursuant to its published General Order 6.4.

Since 1996, federal immigration statutes "allow continued prosecution of a petition after [an alien's] removal" and no longer require "automatic stay[s]" pending appeal. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Accordingly, courts "may not … 'reflexively hold[] a final [removal] order in abeyance pending review.'" *Id.* at 427. Instead, courts may grant the extraordinary remedy of a stay only after making "individualized judgments in each case" to ensure that the moving party has met its burden to show that a stay is warranted under the "traditional stay factors." *Id.* at 426, 433–34 (citation omitted).

But, undeterred by those clear instructions from the Supreme Court, the Ninth Circuit "has adopted the general unwritten practice of deferring any judicial review of stay motions for many months or even years, until the case is eventually assigned to a merits panel for a final disposition." *Rojas-Espinoza*, 167 F.4th at 1070 (VanDyke, J., dissenting from the denial of rehearing en banc). In practice, this means that unopposed and opposed stay motions are treated exactly alike in immigration cases—opposition from the government "neither trigger[s] nor accelerate[s] any pre-merits review of the opposed stay motions." *Id.* at 1074.

Santana gained a full decade in the United States because of this court's "temporary" stay procedures. Though the government regularly (and futilely) opposes stay motions today, in March 2016, the government filed a statement of non-opposition to Santana's stay motion. Thus, "the temporary stay of removal continue[d] in effect until issuance of the mandate or further order of the court." In effect, that meant that Santana got to stay in this country for the pendency of this court's review of the agency's decision regardless of how meritless his claims were. Every

subsequent procedural delay resulted in more time in the United States.

Lucky for Santana, delays abounded in his case. In January 2017, our court entered a show-cause order against Santana's attorney and stayed the briefing in his case until Santana could retain new counsel. Santana's case stayed in appellate purgatory for two years, until 2019, when his new attorney filed a new opening brief. Three months later, in January 2020, the government filed its answering brief. Although the case was now fully briefed, our court did not take any further action on this case for a *full two years*, until February 2022. And even after that extensive delay, the clerk's office merely notified the parties that the case was ready for review and would be assigned to a panel of our court. But this notification only prompted the prior administration to move to administratively close the case, allowing Santana to remain in the United States—without any legal basis—from March 2023 until April 2025. In April 2025, the current administration moved to reopen this case and begin proceedings anew. From there, it took another seven months before the case was finally distributed to a panel of judges and calendared for argument in our court.

\* \* \*

As is crystal clear to anyone willing to look, this meritless appeal was about one thing: *more time in the United States*. And the case's tortured history confirms that our court delivered precisely the one thing immigration petitioners can reliably expect a frivolous immigration appeal to produce in our circuit—*more time*.

With the benefit of a decade of retrospection and a full review of the merits, who could honestly believe that Santana would have pursued this frivolous case had he been

promptly removed and allowed to do so from his home in Mexico? Nobody. But because our court doles out automatic stays of removal as a matter of right, a petitioner like Santana can get a free decade in the United States simply by filing a meritless petition for immigration relief. And the more petitioners that exploit this system, the better it gets for each of them. As caseloads increase, it takes our court longer and longer to deal with utterly meritless immigration petitions, and our court further delays the process of all immigration enforcement. It's a win-win for everyone— except the rule of law.

We cannot continue to ignore the role that this court plays in our nation's immigration crisis. The delays introduced by our court's manifestly unlawful automatic-grant and deferred-review process for stays of removal are particularly problematic. *See Rojas-Espinoza v. Bondi*, --- F.4th ----, No. 24-7536, 2026 WL 674370, at *2 (9th Cir. Mar. 10, 2026) (Tung, J., statement respecting the denial of motion to stay removal). As I've written elsewhere, it is past time for our court to get serious about this issue and address it by conforming our procedures to "the Supreme Court's clear instructions in *Nken*." *Rojas-Espinoza*, 167 F.4th at 1077–78 (VanDyke, J., dissenting from the grant of rehearing en banc).